## DONALDSON v. MARBOLITH STONE CO.

(Circuit Court, S. D. New York. August 16, 1909.)

PATENTS (§ 328*)—INFRINGEMENT—INJUNCTION—PROCESS OF MOLDING CONCRETE.

A qualified preliminary injunction granted, restraining infringement of the Stevens patent, No. 624,563, for a process of molding concrete.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit for infringement of letters patent No. 624,563, for a process of making artificial stone, granted to Charles W. Stevens May 9, 1899. On motion for preliminary injunction. Granted, with qualifications.

O. Ellery Edwards, Jr., for complainant.
William H. Janes, for defendant.

HAND, District Judge. As this patent has been once held valid in the Eastern district of New York, I shall assume its validity here. The defendant raises the question of this adjudication upon the assertion that the suit was essentially uncontested, and the decree of no better force, upon a controversy between other parties, than if it had been taken pro confesso. To the disposition which I shall make of this motion, it will not be necessary to decide this question; and I shall, therefore, as I have said, treat the patent as valid without any consideration whatever upon the merits.

The question is resolved into one of infringement, which involves an interpretation of the extent of the patent itself. The only claim now in question is claim 1, which is for the process of molding a liquid concrete upon a mold of "relatively dry sand," which shall "absorb the surplus moisture from the compound, thereby converting the latter into a solid, or nonliquid, form." The process is therefore to convert the compound into a solid by absorbing the surplus moisture in dry sand. In the specification nothing is said of the character of the sand which is to insure the absorption, except that it be "relatively dry"; and it is quite clear that no mixture is contemplated, but that the proper action of the sand is to accomplish the process.

Upon this motion I must accept as true the statement of Mr. Boswell that the compound which he actually used consists of a base of sand, or pulverized earth—which of the two I do not care—mixed with a petroleum oil having 25 per cent. of paraffine and with powdered talc. The absorbent quality of this mixture is a matter of dispute. From certain experiments done before me, it appeared that there was a great difference in degree between the absorptive power of the sand which the complainant uses and the compound which the defendant uses. The complainant, in his replying affidavits, asserts that he has made other experiments which show contrary results.

However, even the decision of this question is not necessary to the decision of this motion, which may be reduced to a very narrow dilemma. Sellars' patent (No. 244,321) was taken in 1881, and was for a composition for molds. The composition was sand mixed with paraffine, or any waxlike substance not affected by the concrete, and was expressly stated to be used for the molding of concrete, so that finer casting should result. Now Sellars' mold was either absorbent of water, or it was not. Mr. Boswell says it was; but I need not so decide, nor do I. It is enough, if it were not less absorbent than the defendant's molds. Clearly, Stevens' patent cannot take from Sellars the right to use his prior composition. Such absorption as takes place in sand treated with paraffine or other similar material is not an infringe-

ment, and Stevens' patent must be so construed as to exclude the absorption which takes place in Sellars' mixture.

But sand soaked with paraffine and talc is no more absorptive than sand soaked with a like amount of paraffine alone. The complainant's dilemma, therefore, is this: Either Sellars' mold is relatively nonabsorbent, and a fortiori so is the defendant's, or Sellars' mold is absorbent, and the absorptive character of the complainant's mold, which constitutes his patent, must be limited to that greater degree of absorption which comes from untreated sand. In either case it is only necessary for the defendant to use a mold no more absorptive than Sellars' and that is sand mixed at least with 6 parts of paraffine and other similar substance to 100 of sand. I have no means of determining how the talc compares with paraffine in contributing to the imperviousness of the mixture, but I believe it is a material within the uses described by Sellars. If the defendant uses 6 per cent. of paraffine and talc together, he will be only using Sellars' patent, and that he may do. It may perhaps be that talc is not an alkaline wax-like substance; but I believe it will fairly come within the meaning of Sellars' patent. If, however, the complainant can show that it does not so answer, I will compel the defendant to use 6 per cent. of paraffine, without including the talc to make the required percentage.

Therefore let a writ go pendente lite as follows: Enjoining the defendant from using as a mold any sand unmixed with at least 6 per cent. of paraffine and talc. The paraffine may be suspended in oil if the defendant so wishes. It is quite true that the defendant denies the use of any mold other than such as Sellars used; but the denials which, on injunction pendente lite, prevent further inquiry, are those only which go to the existence of the legal right, and not such as concern the propriety of the equitable remedy alone. In this case, if the defendant is to be taken at his word, no harm can come from the writ as suggested. If he means to use other mixtures, the complainant is entitled to the relief sought under common rules.